Good morning, Your Honors. May it please the Court. Jenna Byer from the San Francisco Public Defender's Office, appearing on behalf of Petitioner Carlos Dimas-Rivas. I would like to reserve five minutes of my time for rebuttal. Mr. Dimas was wrongfully convicted of charges which led to the stripping of his residency and his removal order. When the Superior Court vacated those convictions as invalid and unconstitutional, Mr. Dimas moved to reopen that removal order. The agency denied for lack of jurisdiction, believing that its hands were tied. We now know that that understanding is wrong under this Court's decision last week in Suete Oriana v. Garland. We ask the Court to remand for the agency to apply good law and to consider the merits of Mr. Dimas's motion in the first instance. Just a couple follow-ups on that. I guess the first would be, even though it's not jurisdictional, would you agree it's still a mandatory claim processing rule? I would agree that it's a claim processing rule, Your Honor. I think the language of the statute is unclear whether it is a mandatory claim processing rule, but certainly if it's a claim processing rule, then equitable exceptions such as waiver and forfeiture apply, which we believe are applicable in this case. How has the government waived anything here? I mean, whether you call it jurisdictional, it does seem that the government has been pushing 1231A5 as a blockade against reopening the 2000 removal order. Judge Brest, when Mr. Dimas filed his motion to reopen before the immigration judge, the government did not raise 1231A5. In fact, they asked for additional time to respond to Mr. Dimas's motion to reopen. The judge granted that additional time, and they failed to file any response at all before the immigration judge. So we believe that because they did not timely raise this issue when they could have before the immigration court, they have waived it. It does seem that the immigration judge, though, itself found that it wasn't going to grant relief based on 1231A5. Correct, Your Honor. Because of an understanding of law that has since been overturned in Suaté Oriana, the immigration judge found, but for these jurisdictional bars, the vacature of these convictions could warrant reopening of the proceedings. But because of 1231A5 and the mandatory nature of the jurisdictional bar, I can do nothing. And we now know that's And so this court should remand for the agency to decide whether it will. And so just walk me through kind of how you see this going on remand. What do you think happens? And in particular, how do you deal with some of the later removal orders that have also been reinstated? Yes, absolutely, Your Honor. We think that this should be remanded for the agency to determine whether it will reopen the 2000 removal order, which is the original removal order that led to this cascade of events. And the agency can determine in the first instance what happens with the 2002 removal order and the 2005 removal order. Answering that question now would be premature without that initial finding about the 2000 removal order. Well, let's imagine that you're successful in getting in the IJ saying, you know, you're Right. The 2000 removal order, that's kind of null and void. But we do have some later removal orders which were occasioned by your client's unlawful reentry into the United States. Did those later removal orders stand, notwithstanding what happens to the 2000? Or is your position sort of like a domino effect? The latter, Your Honor. We believe that Mr. Demas' removability is built on a house of cards and that once you remove that initial unlawful removal order, the rest should fall and collapse. And it could be that the agency agrees with us, and it could be that they disagree and they require some other action to be taken with regard to the later removal orders. I would point out that the 2005 removal order, whose NTA is in this record, lacks a time and date, which we know is noncompliant with the statute. And Suaté Oriana provides a basis for reopening that removal order as well. The notice to appear in the 2002 removal is not in this record, so I don't know. But regardless, the agency should determine in the first instance what should occur with the 2000 removal order, and the other questions will follow. Is your point that the 2002 and 2005 removal orders are somehow related to 2000 because the lack of time and date is obviously an independent reason for invalidating? But can you walk through how, if you're saying they're related, how they're related? Because you said there's kind of a domino effect. Can you explain a little bit more? Absolutely, Your Honor. Mr. Dimas came to the United States as a permanent resident, and he was convicted of charges that were found to be unconstitutional. And if it had not been for those unlawful convictions, he never would have received this 2000 removal order. And the subsequent removals are based on him being present without admission or parole, which never would have happened had he been permitted to keep his permanent residency. I mean, that seems like a whole separate question that's not in front of us, but it's an interesting one as to what happens if the 2000 removal order is vacated. What about these other ones that are occasioned not just by the 2000 removal order, but also by his illegal reentry into the United States? I wanted to ask you, in your supplemental letter brief, you took the remand on the 2000 and then hold the other two petitions. Why would we do that? I think there are separate reasons to remand those petitions based on errors in the agency's analysis, but it would be confusing for the agency to both be adjudicating the validity of the 2000 removal order and also simultaneously be adjudicating his withholding and CAT claim in the remaining two petitions. If the court disagrees, then we would ask that all three petitions be remanded to the agency, and I can talk about why the other two petitions should also be remanded. But to me, what makes most sense is for the agency to address this original removal order and then decide what happens with his reinstatement of removal and his withholding and CAT claims. I mean, the other two petitions, which are about withholding, CAT, and then change country conditions, don't really have to do with the fact of removal. They're seeking relief from removal. It does seem like an independent set of questions. I mean, you may have an argument that, in fact, the 2005 removal order itself should now fall when the 2001 falls. I get that, but these other two petitions are not about that. They're just about withholding and CAT, and they do seem completely independent as far as I can tell. If that's the court's view, then we would ask that those petitions be remanded as well. I think the most glaring errors come with regard to his motion to reopen based on changed circumstances in El Salvador. The agency found that the state of exception constitutes merely an incremental change in conditions, and that's just not the case under this court's precedent or on the facts of this case. Mr. Dimas is a former gang member, and under the state of exception, which is an entirely new legal regime under President Bukele, individuals meeting his characteristics are being rounded up, warrantless arrests are being conducted, and people are being warehoused under inhumane conditions. And this cannot be characterized as merely a continuation of the state of exception. We would ask for remand in that in 22-1395 as well, Your Honor. How do you distinguish between a material change in country conditions and an incremental change? Well, in this case, Your Honor, this is an entirely new set of laws that applies, and in fact, the gloves are off for the Salvadoran government. They no longer have to abide by due process. They no longer have to abide by human rights protections. Previously, individuals facing charges of illicit association with a gang faced three to five years in prison. Now they face 20 to 30 years. So whatever an incremental change is, this certainly does not meet those facts. And this is being applied against former gang members? Former? Anyone suspected of gang membership? Anyone who has a tattoo? Correct, Your Honor. And the evidence in the record shows that people who have tattoos are being picked up regardless of whether or not they are, in fact, current gang members. And many innocent people are being caught in the fray of this state of exception, which, as the name indicates, is exceptional. It's not the norm for El Salvador. If there are no further questions, I will reserve the remaining time for rebuttal. Okay, thank you. May it please the Court. Jennifer Bowen on behalf of the respondent, the U.S. Attorney General. I'm going to start with case number 22-2101. That's the motion to reopen the 2000 removal order, as that seems to be where the Court is paying attention. Petitioners request that the other two petitions be held in abeyance. There's no basis for it. As Your Honor noted, it's a completely independent situation. In the motion to reopen, the withholding only proceedings, petitioner noted, or the motion to reopen the 2000 proceeding, petitioner noted that they weren't seeking to reopen the 2005 removal order. It's the question of whether or not, even if the 2000 removal order is reopened, petitioner remains removable on the valid 2005 removal order, which was reinstated. Petitioner notes for the first time here that that NTA lacks the date and time, but there's no evidence in the record here that petitioner has sought to reopen the 2005 removal order based on that insufficient... That's true, but I mean, I took the petitioner to be saying, well, we're focused on the 2000 removal order. That was sort of how this whole thing began. We're going to get that one vacated, and then we're going to go from there and start trying to vacate some of these other ones, but we have to start where it began. Fair enough. The respondent's position would be that the 2002 and 2005 are unrelated as they're based on his choice to illegally re-enter the United States. No, I thought you would say that, but the thing is we don't have any ruling from the BIA on that. You may be right, but that's not... I don't think that's really before us. Isn't it for an IJ to decide if we remand? Isn't it for an... I apologize, Your Honor, I don't understand. Isn't it for the IJ to decide if you remand? Remand for a factual development there. There's nothing in the record that the 2000 order was ever reinstated. Is that correct? The record is not clear as to whether or not the 2000 order was reinstated. He did re-enter in 2001. He was prosecuted and removed, but whether or not that removal was pursuant to the reinstatement, it's not clear. That's not in the record. Then he comes back in, we get a 2002 removal order, at which point we never go back to the 2000 removal order. It's either reinstatement of the 2002 removal order or removal proceedings again in 2005 and reinstatement of the 2005 removal order at least twice. But my point was it doesn't matter what the impact on the 2002 or 2005 orders if the 2001 needs to be re-evaluated given the fact it wasn't reinstated. Then it would be up to the BIA eventually to decide the impact, if any, on 2002 and 2005 orders, right? Respondent's position would be that the 2002 and 2005 orders are independent and that they stand alone. Even if the 2000 order is reopened, petitioner remains removable on the 2002 and 2005 removal orders. But that's not an issue before us right now, is it? No, Your Honor. That's Respondent's position here, that even if the 2000 removal order is remanded, the reinstatement of the 2005 removal order, which remains valid, is still the source of the court's jurisdiction in the first two PFRs, where this case involves the consolidation of three petitions for review, two of which do not rely in any way on whether or not the 2000 removal order is reopened. In the petition as to the 2000 removal order, what does the government believe we should do with that in light of SWATE? Yes, Your Honor. In light of SWATE, which we've not had a chance to brief, obviously, but- Well, we did give you a chance to brief. We gave you a supplemental- Well, yes, Your Honor. I apologize, but yes. In light of SWATE, which was issued last Tuesday, Respondent's current position is that there's no redressability. As we noted in the letter brief, there's no redressability where the court still has jurisdiction over and must decide the first two petitions for review. So the question, his removability, even if it's sent back, there's no redressability- I thought your answer to Judge Tunheim was that that issue is not before us, in terms of what would happen to these other removal orders, because you want to basically say there's no redressability because there's a few other removal orders in place. And again, you may be right about that, but we don't have any ruling from the BIA. There's no ruling from the BIA as to whether or not the two other removal orders remain in place? No, there's no ruling from the BIA that if the 2000 removal order falls, whether the other two removal orders stand. There is no removal. I mean, no ruling from the BIA on that issue. Respondent's position is that as a matter of law, the other two stand independently, where they're not based on his criminal convictions, which were vacated. They're based on his unlawful return. On the 2000 removal order, I asked the petitioner about whether this was a mandatory claim processing rule, and the petitioner said, well, maybe, but the government waived or forfeited that. How do you respond to that? Your Honor, Respondent does not concede that the issue was waived or forfeited, but we do understand that under Bonilla, where the board solely addressed, it was, petitioner sought reopening of the 2000 removal order solely sua sponte. The board held that it lacked jurisdiction to address that. So if the issue before the court were solely the 2000 removal order, then under sua te, Respondent understands that it would require remand. The question is, what happens in this case, which is different in that it involves three consolidated petitions for review, and two petitions for review are not resolved by a remand under sua te. As for petitioner's other contentions that the first two petitions for review should be reinstated, Respondent, as argued in the brief, asserts that the agency, that the record fully supports the agency's denial of withholding of removal and protection under CAT in case number 20-73679, and that petitioner did not show sufficiently changed country conditions or sufficiently changed country conditions related to his change in personal circumstances to warrant reopening of those withholding proceedings in case number 22-1935. Can you address the 2019 withholding, only a motion to reopen? I know the agency says it's just a continuation of what's happened, but it seems like it's actually a pretty historic change is what's happening in El Salvador. I think the murder rate there has declined by 90% and the criticism there, and it's been very popular. I think it got reelected by something like 80% of the vote, but the criticism there is that it's come at the cost of civil liberties and innocent people have been dragged in. So it seems like there's been a pretty dramatic change in terms of policies in El Salvador. Yes, Your Honor, the record shows that the board, look, petitioner had the burden to show the change in circumstances. Here in his withholding-only proceedings, he came forward and said, please provide protection from removal where I was targeted as a former gang member based on my tattoos while I was in El Salvador under, I believe, another government program manager, I believe was the name. He then comes forward and says, no, please reopen my withholding-only proceedings. The government is targeting former gang members with tattoos. And the board held that based on what the petitioner submitted, that that was not sufficient to show change circumstances to warrant reopening of the withholding-only proceedings. But the numbers are pretty staggering, aren't they, in terms of the dramatic increase that the record shows and the number of arrests of gang members and former gang members under the new administration in El Salvador? Yes, Your Honor, I believe that the board addresses that and deems those conditions to be worsened conditions, but not sufficiently changed conditions. Okay. If the court has no further questions, respondent will rest on his brace. Thank you. Great. Thank you. Briefly, Your Honors, Suete Mariana marks a fundamental change in law and clearly requires remand in this case. To the extent that the court believes that all three petitions must be treated together, then they all must go back down to the agency to determine in the first instance what happens with the 2000 removal order and whether Mr. Dimas has shown change circumstances in El Salvador. As Your Honors have noted, the changes are dramatic. This legal regime did not since that time Mr. Dimas has been tested positive for HIV. He has also come out as queer. And these are additional vulnerabilities that he faces, both under the state of exception and under a regime that has shown to be homophobic, eliminating agencies that are designed to protect LGBTQ individuals. Reuters notes a wave of murders against LGBTQ people and rising violence against LGBTQ people. So we believe for all of those reasons that case number 22-1395 should also be remanded. If Your Honors have no further questions, petitioner Mr. Dimas will rest. Great. Thank you both for the helpful arguments. Case has been submitted.
judges: LEE, BRESS, Tunheim